IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FINGER FURNITURE COMPANY, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-05-0299 |
| MATTRESS FIRM, INC. d/b/a/ THE MATTRESS FIRM, | § § § | |
| Defendant. | § § | |

ORDER

Pending before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Document No. 10) filed by Mattress Firm, Inc. Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

BACKGROUND

This is an alleged trademark infringement case under the Lanham Act. Plaintiff Finger Furniture Company, Inc. ("Finger"), a furniture and mattress retailer, owns six retail outlets located in the Houston, Texas area. Finger serves customers in Texas and Louisiana, utilizes the newspaper and internet as a means of advertising, and ships to customers in foreign countries. Finger first used the phrase "SLEEP FREE" in August 1995 in a print ad in the Houston Chronicle. Finger has used "SLEEP FREE"

continuously since 1995.  Also, Finger first used the designs referred to as "8-BOX FREE"[1] designs in its print ads in October 2000 and has used the designs regularly ever since.  Defendant Mattress Firm, Inc. ("TMF"), a competing mattress retailer, owns retail outlet stores in the Southwest, Southeast, Midwest, and East regions of the United States.  TMF first used the term "SLEEP FREE" in July 1992 and used designs consisting of boxes enclosing the word "FREE" in its print ads beginning in May 1994.

Finger filed trademark[2] applications with the United States Patent and Trademark Office ("USPTO") for the two "8-BOX FREE" designs on December 11, 2002.  Finger also filed an additional trademark application for "SLEEP FREE" on January 19, 2005.  The USPTO has since rejected Finger's application for the "8-BOX FREE" designs because the marks are purely informational and do not indicate a source, as required to qualify as a trademark.  *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998).  However, the USPTO approved Finger's "SLEEP FREE" mark for

---

[1]One "8-BOX FREE" design is comprised of eight boxes, arranged in two rows of four boxes, each enclosing the word "FREE."  The other "8-BOX FREE" design is of just the eight boxes, arranged in two rows of four boxes.

[2]Finger refers to its applications as service mark applications, where a service mark is any word or symbol that identifies the services of a particular person. 15 U.S.C. § 1127 (2000).  However, trademark is a term often used to refer to marks that protect both goods and services, and both trademarks and service marks are subject to the same rules concerning infringement. 15 U.S.C. §§ 1125(a), 1127 (2000).

publication, and, if the mark survives the opposition period, the USPTO will register the mark.

In the instant case, Finger claims trademark infringement under the Lanham Act of the "SLEEP FREE" and "8-BOX FREE" marks by TMF.  In addition to Finger's federal trademark infringement claim, Finger also claims common law trademark infringement, dilution of trademark value, and misappropriation.  In response, on February 28, 2005, TMF filed the instant motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), accordingly.

<u>STANDARD OF REVIEW</u>

TMF filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  A motion filed under Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case, and a motion filed under Rule 12(b)(6) allows a party to challenge a complaint if the opposing party has failed to state a claim upon which relief can be granted.  *Compare* FED. R. CIV. P. 12(b)(1) *with* FED. R. CIV. P. 12(b)(6).  Usually, when a Rule 12(b)(1) motion is filed with other motions, the court should address the Rule 12(b)(1) jurisdictional issue before addressing an attack on the merits.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001);  *Silver Star Enters., Inc. v. M/V Saramacca,* 19 F.3d 1008,

1013, n.6 (5th Cir. 1994) (declaring jurisdictional challenges must be addressed upon suggestion); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).  However, when issues of fact are central to both the jurisdictional claim and a claim based on the merits, the district court must assume jurisdiction and proceed to the merits of the case. *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) (stating it is more efficient to resolve the merits of the case first rather than indirectly arguing the merits in the context of jurisdiction).

Here, deciding whether jurisdiction is proper requires the Court to determine if diversity or federal question jurisdiction exists.  Both parties agree that no diversity exists since both companies' principal place of business is in Houston, Texas.  In order to determine if federal question jurisdiction exists, the Court must decide if the complaint arises under the Constitution, statutes or treaties of the federal government. 28 U.S.C. § 1331 (2000).  Because determining federal question jurisdiction requires investigation into the merits of Finger's complaint of trademark infringement under the Lanham Act, the Court must bypass the jurisdictional issue and decide whether Finger stated a claim upon which relief can be granted.

A complaint may be dismissed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  It must appear beyond doubt that the plaintiff is unable to prove any facts in support of his claim that would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Also, the complaint must be stated with sufficient clarity such that a court or an opposing party can determine what claims are alleged.  *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  The allegations in plaintiff's complaint are taken as true, and the complaint is construed in a light most favorable to the plaintiff.  *Brown v. NationsbankCorp.*, 188 F.3d 579, 585-86 (5th Cir. 1999); *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).  However, conclusory allegations or legal conclusions are not sufficient to overcome a motion to dismiss.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (stating "'conclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss")(citations omitted).  The district court examines the complaint to determine whether the allegations provide relief on any possible theory or claim.  *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).  Therefore, in this case, the Court must determine whether Finger stated a valid claim of trademark infringement under the Lanham Act.

## LAW AND ANALYSIS

A.    "8-BOX FREE" Marks

Finger claims TMF infringed on its sole right use the "8-BOX FREE" marks. In order to bring a claim of trademark infringement under the Lanham Act, the

supposed owner of the mark must show (1) the mark is protectable and (2) it has been used in commerce. *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974).

In order for a mark to be protectable, it must be capable of distinguishing the owner's goods from those of others. 15 U.S.C. § 1052 (2000). To aid in determining whether marks are distinctive, five mark categories have been created: generic, descriptive, suggestive, arbitrary, and fanciful. *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 768 (1992). Suggestive, arbitrary, and fanciful marks are always protectable, generic marks are never protectable, and descriptive marks are only protectable if they have a secondary meaning. *Id.* Marks that have acquired a secondary meaning are those which, by extended use in connection with a particular product, have become known by the public as specifically referring to that product. *Id.* at 769.

In this case, Finger claims the "8-BOX FREE" designs have acquired a secondary meaning. To determine if the marks have a secondary meaning, a court should look to the following factors: the length and manner of use of the mark by the owner, the volume of sales, the amount and manner of advertising of the mark, the nature of use of the mark in newspapers and magazines, consumer survey evidence, direct consumer testimony, and infringer's intent in copying the mark. *Pebble Beach*

6

*Co.*, 155 F.3d at 541.  Finger claims it used its "8-BOX FREE" marks for years and spent approximately $700,000 advertising and promoting the "8-BOX FREE" marks in conjunction with its other marks.  Finger also claims it polices its advertisements to insure its name and primary marks accompany any use of the "8-BOX FREE" marks.  However, Finger does not provide any information concerning the volume of sales it has acquired from use of the "8-BOX FREE" marks, any consumer survey evidence, or any direct consumer testimony.  Also, the USPTO denied Finger's applications for trademark registration on May 12, 2005 because the marks were considered informational.  The USPTO also found "consumers will not associate the proposed mark specifically with the applicant."  Because Finger's "8-BOX FREE" designs are not distinctive, they are also not protectable under the Lanham Act.

In addition to being protectable, a mark must also be used in commerce in order to bring a claim of trademark infringement under the Lanham Act.  *Am. Heritage Life Ins. Co.*, 494 F.2d at 10.  Under the Lanham Act, a mark is used in commerce if Congress can control the particular type of commerce the mark travels in, such as interstate commerce.  *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971).  Also, if intrastate activity directly or substantially affects interstate commerce, then it satisfies the in commerce requirement of the Lanham Act.  *Id.*; *see also Trail Chevrolet, Inc. v. Gen. Motors Corp.*, 381 F.2d 353,

354 (5th Cir. 1967) (holding Trail Chevrolet's use of "Chevrolet" in local signs and advertisements, exercised a substantial economic effect on interstate commerce). Finger claims its "8-BOX FREE" designs are used in interstate commerce because they are printed in the Houston Chronicle, which is circulated to airports and hotels serving interstate travelers.  Also, Finger claims, because one of its stores is located on a major interstate and because out-of-state customers order Finger's products, its advertisement schemes affect interstate commerce. Because Finger uses its "8-BOX FREE" designs in advertisements that reach other states, the designs are deemed to be used in commerce. However, even though the "8-BOX FREE" marks were used in commerce, Finger is unable to bring a trademark infringement claim under the Lanham Act, because the marks are not protectable.  Hence, TMF's motion to dismiss for failure to state a claim should be granted.

B.    "SLEEP FREE" Mark

       In order for Finger to succeed on a trademark infringement claim for the "SLEEP FREE" mark under the Lanham Act, it must be able to show the mark is (1) protectable and (2) used in commerce, as was required for the "8-BOX FREE" mark.  *Am. Heritage Life Ins. Co.*, 494 F.2d at 10.

       Here, Finger claims its mark is suggestive and therefore protectable because "SLEEP FREE" is a catchy phrase, which attracts attention of potential customers, and

8

identifies Fingers as the source for sales of mattresses.[3]  However, the Court notes

TMF used "SLEEP FREE" in a print ad in the Houston Chronicle on July 4, 1992,

Mattress Land used "SLEEP FREE" in a print ad in a Spokane newspaper on July 19,

2003, Mattress Discounters used "SLEEP FREE" in a Boston Globe advertisement on

July 10, 2004, and other companies across the country have used "SLEEP FREE" in

their advertisements.[4]  Because so many mattress companies use "SLEEP FREE" in

their advertisements, the Court finds it difficult to characterize the phrase "SLEEP

FREE" as suggestive and derived from Finger as the source.

Finger also claims its mark has acquired a secondary meaning and is protectable.

As previously discussed, the Court considers factors such as the length and manner of

use of the mark by the owner, the volume of sales, the amount and manner of

advertising of the mark, the nature of use of the mark in newspapers and magazines,

consumer survey evidence, direct consumer testimony, and infringer's intent in copying

---

[3]Finger also contends its "SLEEP FREE" mark is protected as the USPTO approved Finger's trademark application for publication on the Principal Register.  However, this initial approval is not dispositive.  TMF argues Finger did not disclose any facts about the common usage of the term "SLEEP FREE" in the industry in its application, and, had the USPTO been informed of these facts, the USPTO would not have approved the application. In order for Finger's "SLEEP FREE" trademark to be registered, it must survive a thirty day opposition period.  15 U.S.C. §1063(a) (2000).

[4]The Mattress Outlet used "SLEEP FREE" in an advertisement in the Maui News on July 10, 2003, and Mattress Warehouse used "SLEEP FREE" in an advertisement in The Post, an Ohio newspaper, on June 4, 2004.

the mark to determine if there is a secondary meaning. *Pebble Beach Co.*, 155 F.3d at 541.  Finger claims it spent at least $1,600,000 advertising and promoting the "SLEEP FREE" mark, and TMF misappropriated the "SLEEP FREE" mark for years. However, based on the information before the Court, TMF used the "SLEEP FREE" mark before Finger did, and, even though there is no evidence that TMF continued to use the mark, many other mattress companies used "SLEEP FREE" in their advertising. Also, Finger offers no allegations in its complaint of consumer survey evidence or direct consumer testimony supporting its claim that the public associates "SLEEP FREE" with the Finger Furniture Company.  Based upon the foregoing, the Court concludes "SLEEP FREE" has not acquired a secondary meaning.

The "SLEEP FREE" mark must also be used in interstate commerce in order to support a claim of trademark infringement under the Lanham Act.  *Am. Heritage Life Ins. Co.*, 494 F.2d at 10.  "SLEEP FREE" is used in print ads in the Houston Chronicle, which is delivered to interstate travelers through hotels and airports.  Finger also uses "SLEEP FREE" on its website, which reaches potential customers and can be used to place online mattress orders.  Transfer of products and advertisements through the internet is considered interstate commerce. *See United States v. Runyan*, 290 F.3d 223, 238 (5th Cir. 2002) (holding transfer of child pornography via the internet constitutes transfer through interstate commerce).  Because Finger's print ads reach interstate

travelers and because they are used over the internet, "SLEEP FREE" is used in interstate commerce.  However, because the Court determines "SLEEP FREE" is not a protectable mark, Finger can not bring a claim of trademark infringement of "SLEEP FREE" against TMF, and TMF's motion to dismiss should be granted.

C.     Texas State Law Claims of Common Law Trademark Infringement, Dilution, and Misappropriation

        In addition to Finger's federal claims, Finger also alleges Texas state common law trademark infringement, trademark dilution, and misappropriation by TMF.  In cases involving both state and federal claims, state claims fall within the supplemental jurisdiction of the federal courts.  *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1988).  Under its supplemental jurisdiction, a federal court may choose to hear and decide state law claims along with federal law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  *Id.*  (citing 28 U.S.C. § 1367(a)).  Supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right," so district courts may decline to exercise supplemental jurisdiction in a manner that most effectively deals with the principles of "economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

        In the instant case, Finger asserts state law claims in connection with its federal

trademark infringement claims; however, because all of Finger's federal question claims have been dismissed, no claims under this Court's original jurisdiction remain to which the state claims may attach.   A court should generally decline to exercise supplemental jurisdiction in situations where the federal law claims have been dismissed.  *Id.* at 351.  The district court may choose to dismiss the state law claims absent any adverse impact on the litigants.  *See Transource Int'l, Inc. v. Trinity Indus.*, 725 F.2d 274, 290 (5th Cir. 1984).  Such adverse impact could include an inability to assert the state claims in state court as a result of the running of the statute of limitations.  *See generally Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 563 (1989).  However, this potential problem has been eliminated by 28 U.S.C. § 1367(d), which tolls the running of the limitations period while the state claims are pending in this court and for a period of thirty days after they are dismissed.  Additionally under Texas law, the "savings statute" applies to toll the statute of limitations on state law claims during the pendency of a federal suit in which the claims are alleged.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.064 (Vernon 1997) (allowing a sixty day period for litigants to file their claim in state court after dismissal in federal court for want of jurisdiction).

In the interest of efficiency, if all the federal claims are dismissed before trial, then the state claims should be dismissed as well.  *United Mine Workers of Am. v.*

*Gibbs*, 383 U.S. 715, 726 (1966).  Since this case is still in its early stages, it would promote efficiency to dismiss the state claims along with the federal claim.  Also, allowing the state courts to decide the remaining state issues would benefit both parties involved.  *See id.* (holding "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procurring for them a surer-footed reading of applicable law").  In this case, the Court determines the principles of economy, convenience, fairness, and comity would be best served by declining to exercise jurisdiction over Finger's state law claims. Consequently, Finger's state law claims are dismissed without prejudice.  Accordingly, the Court hereby

ORDERS that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Document No. 10) is GRANTED. Finger's claims in their entirety are dismissed without prejudice.

SIGNED at Houston, Texas, on this  1st day of July, 2005.

_____

DAVID HITTNER

United States District Judge

13